**FITZSIMMONS, Appellant, v. LOFTUS, d. b. a. SHAKER SQUARE APARTMENTS, INC. et, Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24351. Decided July 16, 1958.

Hornbeck, Ritter & Victory, for appellant.
McConnell, Blackmore, Cory & Burke, for appellee.

(HUNSICKER, PJ, DOYLE, J, of the Ninth District, sitting by designation in the Eighth District.)

### OPINION

By DOYLE, J.

This was an action brought to recover damages for injuries received by Thomas J. Fitzsimmons, as the result of an explosion of natural gas in a room in an apartment which he was then occupying.

It was asserted that, as the injured claimant "ignited a cigarette lighter in the kitchen of said apartment for the purpose of lighting a cigarette * * *, suddenly, without any warning whatsoever, and as a direct and proximate result of the negligence of the defendant * * *, a terrific explosion and flash-fire occurred by the ignition of gas," which had escaped from a gas pipe line at the point of its connection with a gas range.

The material part of the grievance was stated to be that "one Walter Succov, custodian of said apartment building, who was an agent and employee of defendants then and there acting within the course and scope of his employment, disconnected the gas stove in the kitchen * * * from the gas pipe line entering said kitchen and moved said stove out from the kitchen wall in order to permit said wall and the back of said stove to be washed. When the washing of said wall and stove had been completed, said Walter Succov pushed the stove back to the wall and reconnected the stove to said gas pipe line. In making said reconnection, said Walter Succov did so in a careless and negligent manner, permitting gas to escape from said connection, and failed to test said connection with a lighted match, or otherwise, in order to ascertain whether or not any gas was escaping therefrom."

Negligence was particularized as follows:

"1. In carelessly and negligently connecting said stove to said gas pipe line in such a way that gas was permitted to escape from said connection.

"2. In failing to inspect and test said connection after reconnecting said stove to said gas pipe line, in order to ascertain whether or not gas was escaping therefrom.

"3. In failing to warn plaintiff and other persons properly occupying said apartment of the dangerous condition caused by the escape of gas from said connection.

"4. In failing to furnish and provide reasonably safe premises for occupancy by the tenant of said suite and her guests, including plaintiff."

The case proceeded to trial, upon issues joined, in the Court of Common Pleas of Cuyahoga County. At the close of plaintiff's evidence, one of the defendants, Don A. Loftus, d. b. a. Shaker Square Apartments, Inc., was dismissed from the case by virtue of a stipulation that the custodian was an employee of the other defendant, Investors Diversified Services, Inc., which had full control of the apartment building during the period covered by the testimony. No complaint is made of this ruling.

The remaining defendant then moved the court for a directed verdict in its favor. This motion was overruled, and the evidence of this defendant was then introduced. At the close of the case, after both sides had rested, the defendant, Investors Diversified Services, Inc., again moved the court for a directed verdict in its favor. This motion was sustained, and, from the judgment entered thereon, the present appeal has been taken.

The sole question before this court is, whether the trial court was

right in ruling as a matter of law that the evidence offered in the trial, and the reasonable inferences to be drawn therefrom, were insufficient to enable reasonable minds to reach a conclusion that the exploding gas came from the gas pipe connection in question, claimed to have been negligently reconnected by the servant of this defendant. **Hamden Lodge, etc., et al., v. Ohio Fuel Gas Co., 127 Oh St 469; Tanzi v. New York Central Rd. Co., 155 Oh St 149.**

By bringing this action, the plaintiff assumed the obligation to show that the negligence of the defendant's servant created such a condition, at the connection of the gas pipe line with the stove, as to allow gas to escape into the kitchen.

This was an affirmative burden and could not be left to surmise, conjecture or imagination. The plaintiff was called upon to produce something amounting to proof, either by direct evidence, or rational inferences of probabilities from established facts. While the plaintiff was not bound to exclude every other possibility of cause for his injury, except that of the negligence of the defendant, he was required to show, by evidence, a greater likelihood that it came from an act of negligence for which the defendant was responsible than from a cause for which the defendant was not liable. If on all the evidence produced in the trial it appeared just as reasonable to suppose that the cause of the explosion and injury was one for which no liability attached to the defendant as one for which the defendant was liable, then the plaintiff failed to make out his case. See: **Gedra v. Dallmer Co., 153 Oh St 258.**

"6. In order to recover against a defendant in a tort action, plaintiff must produce evidence which furnishes a reasonable basis for sustaining his claim. If his evidence furnishes a basis for only a guess, among different possibilities, as to any essential issue in the case, he fails to sustain the burden as to such issue."

**Landor v. Lee Motors, Inc., 161 Oh St 82.**

There is no direct evidence that gas leaked at the connection, nor is there any direct evidence that gas leaked from any other source. There is evidence that natural gas exploded in the kitchen and hurt the plaintiff.

The plaintiff (appellant here) analyzes the liability of the defendant as follows:

"A. It is conceded that there was a natural gas explosion.

"B. Only one gas line entered the kitchen.

"C. There were only two places where a natural gas leak could originate.

"1. in the burners.

"2. in the union.

"D. There were no natural gas leaks in the burners.

"E. Therefore, the natural gas leak came from the union."

In contrast to the conclusion reached in "E" above, there is no evidence that the "union" was in disrepair and leaked gas. In fact, the evidence all pointed to the fact that it was in good condition and did not leak gas, and that the same gas range and connections were used without repair long after the explosion, and no gas leaked therefrom.

It is conceivable that gas entered the room from the burners. It might be suggested, with like plausibility, that it came through the cracks of a door jam, or through an open window. These hypotheses illustrate the wide range of speculation available in guessing the cause of the presence of gas.

In considering the entire record before this court, the mind is left in such uncertainty that it cannot be said, nor could reasonable minds conclude, that a cause attributable to the negligence of the defendant has been indicated by a probability sufficient to be removed from the realm of guess and fancy. In short, the evidence before us does not show that the explosion resulted from negligence for which the defendant was responsible, any more than from a cause for which he was not.

The judgment must be affirmed.

HUNSICKER, PJ, KOVACHY, J, concur.